**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

RICHARD GRAMM and REAPER SOLUTIONS, LLC, *f/k/a* HEADSIGHT, INC.,

Plaintiffs,

v.

DEERE AND COMPANY,

Defendant.

Case No. 3:22-cv-00010-RGE-SBJ

**PLAINTIFFS' MEMORANDUM**
**IN SUPPORT OF MOTION TO COMPEL DISCOVERY**

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ........ **ii**

**TABLE OF AUTHORITIES** ........ **iii**

**INTRODUCTION** ........ **1**

**BACKGROUND** ........ **1**

**I. Plaintiffs' Fourth Set of Requests for Production Is Narrowly Focused on Two Components of Deere's Accused Apparatus.** ........ 1

**A. Plaintiffs' Request Relating to Deere's "Flexible" Arm** ........ 2

**B. Plaintiffs' Requests Relating to Deere's "Control Means"** ........ 4

**II. Plaintiffs Provided Deere with Infringement Contentions Long Before Serving Their Fourth Set of RFPs.** ........ 6

**III. Deere Initially Objected to Plaintiffs' Fourth Set of RFPs as a "Fishing Expedition" and Refused to Produce Any Documents.** ........ 7

**IV. Deere Delayed the Meet and Confer Process and Still Refuses to Produce Most Key Responsive Documents.** ........ 8

**ARGUMENT** ........ **9**

**I. Legal Standard.** ........ 9

**II. Deere's Authority for Its "Fishing Expedition" Objection is Inapposite.** ........ 11

**A. The Cases Deere Cited in Its Original Objections Do Not Support its "Fishing Expedition" Objections.** ........ 12

**B. The Cases Deere Cited in Its Supplemental Objections Do Not Support its "Fishing Expedition" Objections.** ........ 13

**III. Plaintiffs Are Entitled to an Order Compelling Deere to Fully Respond to Their Fourth Set of Requests for Production.** ........ 14

**A. The Requested Discovery Is Relevant and Proportional to the Case.** ........ 14

**B. Deere's May 6, 2026 Statement Confirms This Discovery Is Relevant.** ........ 17

**C. Deere's Initial Responses Were Defective Under Rule 34(b)(2)(C).** ........ 18

**D. Deere Has Engaged in a Pattern of Discovery Abuses.** ........ 19

**IV. Plaintiffs Are Entitled to Their Reasonable Attorneys' Fees and Costs.** ........ 20

**CONCLUSION** ........ **20**

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arnold v. ADT Sec. Servs.*, Inc., 627 F.3d 716 (8th Cir. 2010) .......... 20

*Briney v. Deere & Co.*, 150 F.R.D. 159 (S.D. Iowa 1993) .......... 10

*Brown v. Ameriprise Fin. Servs., Inc.*, 276 F.R.D. 599 (D. Minn. 2011) .......... 13

*Brown v. Iowa*, 152 F.R.D. 168 (S.D. Iowa 1993) .......... 20

*Dawn Equip. Co. v. Kentucky Farms, Inc.*, 140 F.3d 1009 (Fed. Cir. 1998) .......... 16

*DCG Sys. v. Checkpoint Techs., LLC,* No. C 11-03792, 2012 WL 1309161 (N.D. Cal. Apr. 16, 2012) .......... 11

*Dollar v. Long Mfg., N.C. Inc.*, 561 F.2d 613 (5th Cir. 1977) .......... 10

*Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644 (N.D. Cal. 2004) .......... 10, 19

*Genuine Enabling Tech. LLC v. Sony Grp. Corp.*, 167 F. 4th 1196 (Fed. Cir. 2026) 15, 16

*Gramm v. Deere & Co.*, 169 F. 4th 1353 (Fed. Cir. 2016) .......... 4

*Honeywell Int'l Inc. v. Acer Am. Corp.*, 655 F. Supp. 2d 650 (E.D. Tex. 2009) .......... 16

*Huseby, LLC v. Bailey*, 2021 WL 3206776 (D. Conn. Jul. 29, 2021) .......... 19

*In re Vehicle Tracking & Sec. Sys., ('844) Pat. Litig.*, No. 0:11-md-02249-DWF, 2012 WL 3776463 (D. Minn. Aug. 30, 2012) .......... 13

*Invensas Corp. v. Renesas Elecs. Corp.*, 287 F.R.D. 273 (D. Del. 2012) .......... 15

*Kemin Foods, L.C. v. Pigmentos Vegetales del Centro S.A. de C.V.*, 357 F. Supp.2d 1105 (S.D. Iowa 2005) .......... 16

*Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168 (N.D. Iowa 2017) ................ 19

*Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318 (Fed. Cir. 1990) ............................ 12

*Murata Mfg. Co. v. Bel Fuse, Inc.*, 422 F. Supp. 2d 934 (N.D. Ill. 2006) ........................ 15

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Triumvirate, LLC*, Case No. 3:23-cv-00146-SLG, 2024 WL 7145503 (D. Alaska, May 16, 2024) ....................................... 10

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355 (Fed. Cir. 2006)....... 12

*Panavision Imaging, LLC v. OmniVision Techs., Inc.*, No. CV09-1577 DMG (CTX), 2010 WL 11507883 (C.D. Cal. June 7, 2010) ............................................................ 17

*Prism Techs, LLC v. Adobe Sys., Inc.*, No. 8:10CV220, 2011 WL 6210292 (D. Neb. Dec. 14, 2011) ............................................................................................................ 11

*Prism Techs., LLC v. Rsch. in Motion, Ltd.*, No. 8:08CV537, 2010 WL 1254940 (D. Neb. Mar. 24, 2010)................................................................................................... 11

*Realtime Data, LLC v. Packeteer, Inc.*, Civil Action No. 6:08cv144, 2009 WL 2590101 (E.D. Tex. Aug. 18, 2009) ........................................................................................ 15

*Signify N. Am. Corp. v. Robe Lighting Inc.*, No. 20-62302-CIV, 2022 WL 22889879 (S.D. Fla. Mar. 10, 2022) ........................................................................................ 17

*Superior Indus., Inc. v. Precision, Inc.*, No. 4:21-cv-00224-RGE-SBJ, 2023 WL 11113804 (S.D. Iowa July 11, 2023) ....................................................................... 12

*Tessera Inc. v. Sony Elecs., Inc.*, No. 10-0838-RMB-KMW (D. Del. Aug. 8, 2012)....... 15

*Trs. in Bankr. of N. Am. Rubber Thread Co. v. United States*, 593 F.3d 1346 (Fed. Cir. 2010) ................................................................................................................... 17

*Turkowski v. Poplar Bluff Reg'l Med. Ctr., LLC*, No. 1:25-CV-00140 SNLJ, 2025 WL 3012993 (E.D. Mo. Oct. 28, 2025) .......... 14

*Vallejo v. Amgen, Inc.*, 903 F.3d 733 (8th Cir. 2018) .......... 13, 14

*Ventriloscope v. MT Tool & Mfg.*, No. 16 C 5298, 2017 WL 489416 (N.D. Ill. Feb. 6, 2017) .......... 11

*Woldum v. Roverud Const., Inc.*, 43 F.R.D. 420 (N.D. Iowa 1968) .......... 10

**Statutes**

35 U.S.C. § 112(f) .......... 15

**Rules**

Fed. R. Civ. P. 16(b) .......... 12

Fed. R. Civ. P. 26(b)(1) .......... 9

Fed. R. Civ. P. 26(d)(3)(B) .......... 19

Fed. R. Civ. P. 34 .......... 18

Fed. R. Civ. P. 34(b)(2)(C) .......... 8, 10, 18, 19

Fed. R. Civ. P. 37 .......... 14

Fed. R. Civ. P. 37(a)(3)(B) .......... 1, 10

Fed. R. Civ. P. 37(a)(5)(A) .......... 20

## INTRODUCTION

On September 25, 2026, Plaintiffs served their Fourth Set of Requests for Production on Defendant Deere and Company ("Deere"), comprising four requests for documents related to the terms "flexible" and "control means" from the asserted claims of U.S. Patent No. 6,202,395 ("the '395 Patent"). Deere responded with a litany of objections to each request and has ultimately refused to produce any documents responsive to at least two RFPs. Deere objects that the RFPs constitute a "fishing expedition," thus allowing it to withhold discovery unless and until Plaintiffs provide it with "detailed alleged infringement contentions." In other words, Deere conditioned its compliance with mandatory discovery rules on Plaintiffs' production of interim infringement contentions which this Court has *twice* ruled that Plaintiffs are not required to provide.[1]

Because Deere cannot withhold responsive materials on unfounded *quid pro quo* demands for interim infringement contentions, Plaintiffs respectfully move for an order compelling Deere to provide the requested documents under Fed. R. Civ. P. 37(a)(3)(B).

## BACKGROUND

### I. Plaintiffs' Fourth Set of Requests for Production Is Narrowly Focused on Two Components of Deere's Accused Apparatus.

Plaintiffs' Fourth Set of Requests for Production ("RFPs") seeks documents and things that will confirm that Deere's accused apparatus includes certain limitations of independent claim 12 of the '395 Patent identified in bold below – namely, that Deere's

---

[1] *See* ECF 255 at n.1; *see also* ECF 264 (granting-in-part Plaintiffs' motion to correct the schedule and declining to impose a deadline for interim infringement contentions).

ground contacting arm or rod is "*generally linear*" and is "*flexible*," and that the source code used in the head controllers of Deere's combine harvesters perform the recited function of the "control means" limitation (i.e., "*for raising and lowering the header … in maintaining the header a designated height above the soil*"):

> Apparatus for maintaining a non-cut crop header in a crop harvester a designated height above the soil as the crop harvester traverses a field, said apparatus comprising:
>
> a **generally linear arm** coupled to the header and having first and second opposed ends, wherein the first end of said arm engages and is displaced over the soil as the header moves above the soil;
>
> angular deflection sensing means coupled to the second end of said arm for measuring a deflection of said arm when the first end of said arm encounters irregularities in the soil as the header moves above the soil and for providing a first signal representing the extent of deflection of said arm;
>
> biasing means for urging said arm to a selected inclined orientation relative to vertical, wherein said arm in said selected inclined orientation extends below and aft of said angular deflection sensing means as the crop harvester moves in a forward direction, said biasing means allowing for forward displacement of the first end of said arm beyond vertical when the crop harvester is moved rearwardly while the first end of said arm engages the soil without damaging said arm, with said biasing means again urging said aim to said selected inclined orientation when the crop harvester is again moved in the forward direction or when the second end of said arm is removed from contact with the soil; and
>
> **control means** coupled to said header and said angular deflection sensing means and responsive to said first signal **for raising or lowering the header in accordance with said first signal in maintaining the header a designated height above the soil**, wherein **said flexible arm** and angular deflection sensing means are attached to a head housing disposed on a forward portion of said combine and said head housing is comprised of polyurethane and includes a metal tip and a mounting bracket for attaching said metal tip to a forward end of said head housing, and wherein said mounting bracket further couples **said flexible arm** to a forward end of said head housing.

(emphasis added).

A. Plaintiffs' Request Relating to Deere's "Flexible" Arm

Plaintiffs' Request No. 50 relates to proving that the generally linear arm in Deere's accused apparatus is "flexible" and is within the scope of independent claim 12 and its dependent claims. *See* Ex. A[2] at 5. To do so, Request No 50 seeks several categories of documents relating to the structure Deere refers to as the "Ground Contacting Rod.", *i.e.*, the arm. Specifically, the Request seeks "engineering analyses, test reports, design documents, specifications, drawings, calculations, materials properties documentation (e.g., metallurgical specifications/criteria and other material properties specifications/criteria), and technical communications," all of which will potentially confirm that Deere's "arm" is "flexible" under the Court's construction. Plaintiffs also defined the "Ground Contacting Rod" to be the same structure referred to the same name in a Deere production document (DEERE 00009893-9901).

Deere long understood that the term "flexible" as it pertains to Deere's ground contacting rod or arm would be the subject of discovery. On May 6, 2026, Deere filed a Statement with the Court regarding the parties' Joint Proposed Schedule. ECF 242. Deere argued that the Court should stay discovery pending issuance of the Court's Second Order on Claim Construction because that order could "be dispositive of this action." ECF 242 p. 2. Deere's Statement expressly resisted discovery into the term "flexible" because, in Deere's view, if the Court were to adopt its proposed construction of that term, such construction "[would] be dispositive on the issue of noninfringement of the patent-in-suit, because Deere's alleged 'arm' is a rigid steel rod…." *Id.* Notably, on May 29, 2026, when

[2] Unless otherwise noted, all exhibits cited herein are attached to the Declaration of Christopher Young, dated November 23, 2026 ("Young Decl.").

the parties filed their Joint Proposed Schedule, Deere did not request a deadline for Plaintiffs to file the interim infringement contentions. *See* ECF 245.

This Court issued its Second Order on Claim Construction on July 7, 2026. ECF 246. It did not adopt Deere's proposed construction of the term "flexible." *Id.* pp. 12-14. Rather, the Court construed "flexible" to mean "the ability to bend without imperiling function." *Id.* at 14. Request No. 50 properly seeks documents and things that will confirm that Deere's ground contacting rod is both "generally linear" and "has the ability to bend without imperiling function."

B. Plaintiffs' Requests Relating to Deere's "Control Means"

Plaintiffs' Request Nos. 51-53 go to the heart of the "control means" limitation of independent claim 12 of the '395 Patent. One of the main issues in this dispute is whether the head controllers used on Deere combines (*i.e.*, "Deere Head Controllers") sold during the infringing period perform the recited function of the "control means" limitation, *i.e.*, raising and lowering the head in response to signals generated by the rotation sensor coupled to the height sensing arm (*i.e.*, the ground contacting rod). Both the Federal Circuit and this Court held that one version of the Deere Head Controllers (*i.e.*, the Dial-A-Matic Version #1) used on Deere combines during the infringing period performs the recited function. *See Gramm v. Deere & Co.*, 169 F. 4th 1353, 1361 (Fed. Cir. 2016); ECF No. 246 at 23.

Plaintiffs precisely defined terms used in Request Nos. 51-53, as follows:

> "**Deere Combine**" means an agricultural combine harvester manufactured or sold by Deere in the United States.

> "**Deere Corn Header**" or "**Deere Corn Head**" means a corn header attachment manufactured or sold by Deere in the United States.
>
> "**Deere ECO System**" means the controlled document release system or engineering change order system version control system or process used by Deere to propose, review, approve, and implement modifications to a product's design, parts, bills of materials, or manufacturing processes.
>
> "**Deere Head Controller**" means any controller for a Deere Combine manufactured or sold between December 31, 1997 and December 31, 2018 for raising and lowering a Deere Corn Header, including but not limited to the Dial-A-Matic controller, E01 controller, and LC1 controller.
>
> "**Deere Header Height Sensor**" means any height sensor for use on Deere Corn Heads manufactured or sold by Deere in the United States after July 1, 2011 and through December 31, 2018, including but not limited to Model Nos. AXE21004, AXE45341, AXE51451, AXE55725, and AXE82760.
>
> "**Source Code**" means a human readable program including all revision notes and comments describing or explaining any features or functionality of the program.

*Id.* at 1-2. These definitions make clear that Request Nos. 51-53 are narrowly tailored, seeking documents and things (1) relating only to certain "Head Controllers" and "Header Height Sensors" manufactured or sold by Deere within a specific time frame, including those "Head Controllers" that are configured for use with the five specifically-identified model numbers of "Deere Header Height Sensor[s]"; (2) from specifically identified sources, *e.g.*, Deere's controlled document release system or engineering change order/version control system or process used by Deere; (3) the "latest version" of source code (rather than all versions) for the Deere Head Controllers that are the same or equivalent to Dial-A-Matic Version #1 that are configured for use with specifically-identified Deere Header Height Sensors; and (4) documents regarding the features, functionality and operation of those specifically-identified and/or described Deere Head

Controllers which will verify that they perform the same or equivalent function in substantially the same way to achieve the same result as Dial-A-Matic Version #1

## II. Plaintiffs Provided Deere with Infringement Contentions Long Before Serving Their Fourth Set of RFPs.

Contrary to the narrative Deere advanced during the meet and confer process, Plaintiffs have already served multiple detailed infringement contentions. When this case was pending before the Northern District of Indiana, Plaintiffs provided Deere with infringement contentions on August 3, 2015. *See* Young Decl., ¶8. Plaintiffs provided Deere with Supplemental Infringement Contentions on May 20, 2022, and with Second Supplemental Infringement Contentions dated June 2, 2022. *See id.* The 2022 contentions were timely and complied with this Court's Scheduling Order. *See* ECF 172.

Plaintiffs' Second Supplemental Infringement Contentions were 58 pages long (without exhibits) and identified the same recited function for "control means" as found by this Court in its Second Order on Claim Construction, *i.e.*, "raising and lowering the header in accordance with said first signal in maintaining the header a designated height above the soil." *Compare* Ex. D, Claim Chart at 29 *with* ECF 246 at 22. They specifically identified how the Deere corn heads, in combination with the five Deere height sensor models (*i.e.*, Model Nos. AXE21004, AXE45341, AXE51451, AXE55725, and AXE82760 (referred to as "the Accused Height Sensors") meet the limitations of "a generally linear arm …", "said flexible arm…", the "angular deflection sensing means…" and the "biasing means…" of at least independent claim 12 (*see* Ex. D, Claim Chart at 1-2), and Plaintiffs' infringement contentions also identified that all Deere combines sold during the infringing period

include head controllers that meet the "control means" limitation of independent claim 12. Deere asserts its combines do not meet the "control means" limitation, thus establishing that Plaintiffs are entitled to the source code and other technical information used in its head controllers as sought by Request Nos. 51, 52, and 53.

Plaintiffs' contentions also set forth their theories of literal infringement and infringement under the doctrine of equivalents. As to literal infringement, Plaintiffs explained that the Accused Height Sensors:

> were made, used, offered for sale, or sold in the United States or imported into the United States or imported into the United States by Deere on or before December 31, 2018, and when installed on Deere "non-cut crop headers ("Deere Headers") and coupled to a head controller [fn. 2 "a head controller that corresponds to the 'control means' of independent claim 12"] (collectively the "Accused Apparatus") literally infringes [the '395 Patent] in the manner as charted herein. The Accused Apparatus, including one or more of the Accused Height Sensors, infringe at least the following claims of the '395 Patent: 12, 18, 20, 21, 22, and 25 (the "Asserted Claims").

*Id*. at Claim Chart 1. As to the doctrine of equivalents, Plaintiffs explained that "if the Accused Apparatus does not literally meet each of the limitations of this claim element, then the Accused Apparatus meets each of the limitations of this claim element under the doctrine of equivalents." *Id*. at Claim Chart 29.

## III. Deere Initially Objected to Plaintiffs' Fourth Set of RFPs as a "Fishing Expedition" and Refused to Produce Any Documents.

Deere served its responses to Plaintiffs' Fourth Set of RFPs on October 26, 2026. Ex. B. The responses did not provide any substantive information whatsoever, repeatedly characterizing Plaintiffs' requests as objectionable "fishing expedition":

> Deere also objects to this Request on the basis that Plaintiffs have not served detailed alleged infringement contentions identifying any Deere ground contacting

> rod as purportedly satisfying the asserted claims under the Court's claim construction, including the "flexible arm" limitation. Plaintiffs' Request amounts to a fishing expedition and is objectionable.

Ex. B at Deere's Response to Request No. 50 at 7-8. Deere's objections to Request Nos. 51-53 were substantively identical and each cited inapposite cases purportedly in support. *See id*. at 9, 10, 12. For every request, Deere's original responses failed to state whether any responsive materials were being withheld as Rule 34(b)(2)(C) requires. *See id*. at 7-12.

## IV. Deere Delayed the Meet and Confer Process and Still Refuses to Produce Most Key Responsive Documents.

Plaintiffs requested a meet and confer at 10:56 a.m. on November 3, 2026. Ex. C at 11. After an additional exchange of emails, which included Plaintiffs detailed explanation of the deficiencies of Deere's responses, Deere stated "we do not agree with your assertions," and noted that its counsel was not available to meet and confer until Wednesday, November 11, eight days after Plaintiffs' initial request. *Id*. at 9.

During the meet and confer, Deere's counsel acknowledged that Deere did not include the necessary statements required by Rule 34(b)(2)(C) and further acknowledged that Deere was withholding responsive documents but stated that he needed to confer with Deere and would endeavor to respond further "next week," possibly not until November 20. *See* Young Decl., ¶ 6. Deere's counsel has since asserted that the original response complied with the Rule. *See* Ex. C at 3. Deere's counsel also requested that Plaintiffs' counsel provide authority supporting Plaintiffs' position. Young Decl., ¶ 6.

On November 13, Plaintiffs emailed Deere summarizing the meet and confer, explaining why Deere's cited authority did not support its "fishing expedition" objection,

and providing authority showing that those objections were improper. *See* Ex. C at 3-7. Deere's counsel disputed Plaintiffs' summary and responded that he needed to confer with his client, that Deere would supplement its responses the week of November 16, and that the supplementation would likely "moot at least some of Plaintiffs' issues." *See id.* at 2-3.

On November 20, seventeen days after Plaintiffs' requested a meet and confer, Deere served supplemental responses. Ex. E. Deere confirmed that it objected to Request Nos. 52 and 53 in their entirety and had not produced responsive materials, and it reasserted its blanket "fishing expedition" objections to those requests. *See id.* at 12-16. As to Request No. 50 Deere now states, subject to its objections, that responsive documents "will be produced to the extent that they exist and can be located after a reasonable search," [3] (*see id.* at 9) and agreed to meet and confer a second time with Plaintiffs' regarding the scope of Request No. 51, again with the caveat that responsive documents "exist and can be located after a reasonable search." *See id.* at 10. Deere has not stated when a full production will occur. *See generally id.*

## **ARGUMENT**

### **I. Legal Standard.**

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" The "overriding purpose of the federal discovery

---

[3] On November 24, 2026, Deere produced thirteen pages from what appears to be an approved Deere vendor, Stalder Spring, of Springfield, OH, which may be partly responsive to Request No. 50. *See* Young Decl., ¶ 10.

rules is to promote full disclosure of all facts to aid in the fair, prompt and inexpensive disposition of lawsuits." *Woldum v. Roverud Const., Inc.*, 43 F.R.D. 420, 420 (N.D. Iowa 1968). As this Court has long recognized and expressly admonished Deere, "[n]o longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case." *Briney v. Deere & Co.*, 150 F.R.D. 159, 163 (S.D. Iowa 1993) (quoting *Dollar v. Long Mfg., N.C. Inc.*, 561 F.2d 613, 616 (5th Cir. 1977)). "Nor may one party condition its compliance with its discovery obligations on receiving discovery from its opponent." *Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 653 (N.D. Cal. 2004).

Rule 34(b)(2)(B) governs the timing of production: when a party states that it "will produce copies of documents or of electronically stored information," "[t]he production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response." Rule 34 does not "accord to a litigant the ability to produce responsive documents whenever that litigant finds it appropriate, so long as a written response to the discovery request is timely provided. Rather, [it] requires that the documents themselves be produced within the specified 30 days or other specified reasonable time …." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Triumvirate, LLC*, Case No. 3:23-cv-00146-SLG, 2024 WL 7145503 at *1 (D. Alaska, May 16, 2024).

Where a party fails to respond to discovery requests properly served by its opponent, the party seeking discovery may move for an order compelling "an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B); *see also Briney*, 150 F.R.D. at 163 ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper

litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession.") (citation omitted).

The Federal Rules do not require patentees to serve infringement contentions. Some districts, though not this one, have local rules requiring initial infringement contentions, and even those "do[] not require [a] Plaintiff to prove its infringement case." *Ventriloscope v. MT Tool & Mfg.*, No. 16 C 5298, 2017 WL 489416, at *5 (N.D. Ill. Feb. 6, 2017) (*citing DCG Sys. v. Checkpoint Techs., LLC*, No. C 11-03792, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012) (such rules "do not, as is sometimes misunderstood, require…a plaintiff to prove its infringement case"). That is particularly true where the accused products "require analysis of highly technical information that is not necessarily apparent in the products' final manifestation" because "software cases present unique challenges because plaintiffs typically do not have access to the underlying technical information alleged to infringe the patent." *Prism Techs, LLC v. Adobe Sys., Inc.*, No. 8:10CV220, 2011 WL 6210292 at *7 (D. Neb. Dec. 14, 2011) (quoting *Prism Techs., LLC v. Rsch. in Motion, Ltd.*, No. 8:08CV537, 2010 WL 1254940, at *3 (D. Neb. Mar. 24, 2010)). The appropriate time for a patentee to refine its infringement contentions is after it obtains the necessary discovery, which is why this Court set an April 12, 2027 deadline for Plaintiffs' final infringement contentions. ECF No. 255.

## II. Deere's Authority for Its "Fishing Expedition" Objection is Inapposite.

Deere's original responses cited four cases in support of its blanket "fishing expedition" objection, and its supplemental responses added six more cases. In the nearly

two months since Plaintiffs served their Fourth Set of RFPs, Deere has not cited any authority that justifies its blanket refusal to produce responsive materials.

### A. The Cases Deere Cited in Its Original Objections Do Not Support its "Fishing Expedition" Objections.

None of the cases cited in Deere's original responses support its demand that Plaintiffs provide interim infringement contentions before Deere will produce responsive documents. *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990) involved an ancillary discovery dispute about whether a patentee could obtain confidential damages-related discovery from a nonparty competitor. *See id.* at 1319-1320. It does not discuss infringement contentions, a *Markman* or claim construction ruling, or any sequencing of contentions relative to a defendant's fact discovery obligations.

*Superior Indus., Inc. v. Precision, Inc.*, No. 4:21-cv-00224-RGE-SBJ, 2023 WL 11113804, at *2 (S.D. Iowa July 11, 2023) involved a patentee's motion to amend its infringement contentions after the Court's *Markman* Order, analyzed under the good cause/diligence standard of Rule 16(b) and the Federal Circuit's opinion in *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006). *See id.* at *2-3. It addressed whether a plaintiff may amend existing infringement contentions following claim construction. It did not involve a court-imposed requirement to serve interim contentions, nor did it address sequencing such interim contentions ahead of fact discovery. In contrast, fact discovery had closed before the amendment was granted, so the contentions at issue followed rather than preceded fact discovery. *See id.* at *5.

*In re Vehicle Tracking & Sec. Sys., ('844) Pat. Litig.*, No. 0:11-md-02249-DWF, 2012 WL 3776463, at *1, *7 (D. Minn. Aug. 30, 2012) the court prohibited an MDL plaintiff from offering contentions not set forth in its most recent claim charts, absent a future showing of good cause, after the plaintiff had multiple opportunities to cure deficient contentions under a pretrial order requiring contentions before discovery. *See id.* at *1, *6. It did not involve a demand for interim contentions after *Markman* or a request to sequence fact discovery after obtaining post-*Markman* interim contentions. Indeed, the opinion noted the contentions would "shape discovery, dispositive motions, the *Markman* hearing, etc.," thus confirming claim construction had not occurred. *See id.* at *6.

*Brown v. Ameriprise Fin. Servs., Inc.*, 276 F.R.D. 599, 605 (D. Minn. 2011) is an employment discrimination case concerning sanctions against a putative class action plaintiff who copied her complaint's allegations from an unrelated complaint. *See id.* at 605 (quotation omitted). *Brown* involves no infringement contentions, no *Markman* ruling, and no sequencing of contentions and discovery.

**B. The Cases Deere Cited in Its Supplemental Objections Do Not Support its "Fishing Expedition" Objections.**

None of the cases cited in Deere's supplemental responses support its demand that Plaintiffs provide interim infringement contentions before Deere will produce responsive documents. *Vallejo v. Amgen, Inc.*, 903 F.3d 733 (8th Cir. 2018) is a products liability case that does not address patent infringement contentions, much less a demand for interim contentions before producing responsive documents. It involves a plaintiff challenging a

district court order limiting the scope of her general causation phase discovery. *See id.* at 737-740.

*Turkowski v. Poplar Bluff Reg'l Med. Ctr., LLC,* No. 1:25-CV-00140 SNLJ, 2025 WL 3012993 (E.D. Mo. Oct. 28, 2025), involves a claim for discrimination under the Missouri Human Rights Act in which the plaintiff sought discovery supporting his assertion that he was an employee rather than an independent contractor in hopes of avoiding dismissal of his claim. *See id.* at *3.

The four remaining cases cited in Deere's Supplemental Response only address compliance with other districts' patent local rules. *See* Ex. E at 12-16. They stand for the unremarkable propositions that infringement contentions should comply with applicable local rules and that patentees are entitled to discovery regarding accused products.

## III. Plaintiffs Are Entitled to an Order Compelling Deere to Fully Respond to Their Fourth Set of Requests for Production.

Deere's refusal to produce is rooted in its campaign to immediately extract further interim infringement contentions, not in any genuine relevance or proportionality concern. Thus, the Court should compel Deere to provide the requested documents under Rule 37.

### A. The Requested Discovery Is Relevant and Proportional to the Case.

This Court declined to adopt Deere's proposed constructions of "flexible" and "control means" in its Second Order on Claim Construction, and Plaintiffs are entitled to discovery regarding those claim terms. Holding otherwise would require Plaintiffs to prove their case before taking discovery from the accused infringer, a requirement courts routinely reject. *See Invensas Corp. v. Renesas Elecs. Corp.*, 287 F.R.D. 273, 283 (D. Del.

2012) (discussing with approval a related decision holding that "the inherent purpose of discovery would be stymied by limiting all discovery requests to the infringement known by the patent holder during the early stages of litigation") (quoting *Tessera Inc. v. Sony Elecs., Inc.*, No. 10-0838-RMB-KMW, slip op. at 8 (D. Del. Aug. 8, 2012)); *Realtime Data, LLC v. Packeteer, Inc.*, Civil Action No. 6:08cv144, 2009 WL 2590101 at *5 (E.D. Tex. Aug. 18, 2009) ("'Confirming' theories of infringement is a task left to discovery, while the preparation and supplementation of infringement contentions is a matter of pleading and merely notifies a defendant of the asserted theories of infringement in order to provide adequate notice and streamline discovery"); *Murata Mfg. Co. v. Bel Fuse, Inc.*, 422 F. Supp. 2d 934, 946 (N.D. Ill. 2006) (a patentee need not "win" its case prior to taking discovery, and an accused infringer may not withhold "admittedly relevant discovery materials until after [the patentee] has effectively proven liability").

Each category of requested documents is narrowly tailored and relevant to literal infringement or infringement under the doctrine of equivalents. To establish literal infringement of a claim invoking 35 U.S.C. § 112(f), the patent holder must show that the accused device performs the identical function as recited in the means clause with structure that is the same or equivalent to the structure disclosed in the specification for performing that function. 35 U.S.C. § 112(f). *Genuine Enabling Tech. LLC v. Sony Grp. Corp.*, 167 F. 4th 1196, 1202 (Fed. Cir. 2026). One test for establishing equivalency of structure is the function-way-result test – which is met by showing the accused device performs the recited

function in substantially the same way to achieve substantially the same result. *See id.* at 1202-03.

Similarly, a doctrine of equivalents infringement analysis "requires the Court to determine whether or not the allegedly infringing product performs substantially the same function, in substantially the same way, to obtain substantially the same result as the claimed invention." *Kemin Foods, L.C. v. Pigmentos Vegetales del Centro S.A. de C.V.*, 357 F. Supp.2d 1105, 1124 (S.D. Iowa 2005) (citing *Dawn Equip. Co. v. Kentucky Farms, Inc.*, 140 F.3d 1009, 1016 (Fed. Cir. 1998)).

The Court has already found that the Deere Dial-A-Matic Version #1, Version #2, and Version #3 perform the function of the control means limitation of "*raising or lowering the header in accordance with said first signal in maintaining the header a designated height above the soil*." ECF 242 at 26. It is also indisputable that Deere's later versions of head controllers sold through the end of December 2018 also perform that function. Thus, Plaintiffs are entitled to discovery regarding the information solely in Deere's possession and control regarding the design, function, and operation of Deere's later versions of head controllers, including the source code used by those later versions of head controllers to verify that they too perform the same or substantially the same function with structure that is the same or equivalent to the structure disclosed in the '395 Patent for performing that function, by determining the "way" those later head controllers are designed or programmed to achieve the "result" of raising or lowering the head. Courts routinely permit such discovery, including after claim construction. *See Honeywell Int'l Inc. v. Acer Am. Corp.*, 655 F. Supp. 2d 650, 656-57 (E.D. Tex. 2009) (granting patentee's motion to compel

after the *Markman* opinion, evaluating the patentee's preliminary contentions "without regard to the Court's *Markman* opinion," and finding that "absent this absent discovery, Honeywell cannot determine which CPT products to accuse"); *Signify N. Am. Corp. v. Robe Lighting Inc.*, No. 20-62302-CIV, 2022 WL 22889879, at *5 (S.D. Fla. Mar. 10, 2022) (permitting patentee to take discovery regarding products not expressly accused over the alleged infringer's "fishing expedition" objection to same); *Panavision Imaging, LLC v. OmniVision Techs., Inc.*, No. CV09-1577 DMG (CTX), 2010 WL 11507883, at *5 (C.D. Cal. June 7, 2010) (affirming order to compel production and noting "it does not appear to the Court that Plaintiff is attempting to engage in a fishing expedition, but rather, to gather the information necessary to conduct the very analysis that Canon argues Plaintiff has failed to complete, *i.e.*, to identify with specificity which patents the uncharted products are accused of infringing and the basis for the accusation of infringement").

**B. Deere's May 6, 2026 Statement Confirms This Discovery Is Relevant.**

Deere understood that the disputed terms would be the subject of discovery if the Court did not adopt its proposed constructions of "flexible" and "control means." Indeed, Deere asked the Court to defer discovery until after claim construction precisely because it knew Plaintiffs would seek to serve such requests. *See* ECF 242 p. 2. The Court did *not* adopt Deere's constructions, thus it knew that discovery on those limitations would follow.

Deere should be estopped from asserting that the very discovery it sought to stay earlier in the action is "irrelevant" now. *See* ECF 246 at 17 (*quoting Trs. in Bankr. of N. Am. Rubber Thread Co. v. United States*, 593 F.3d 1346, 1353-54 (Fed. Cir. 2010) (quotation omitted) (noting that "where a party assumes a certain position in a legal

proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."). Having taken the position that this Court should delay fact discovery until after claim construction – a schedule which this Court followed – Deere cannot now refuse to participate in the fact discovery it successfully sought to delay. *See id*. at 19 (recognizing in a different (claim construction) context that "inconsistent position-taking unfairly advantages Deere ….").

Deere has not provided any factual basis for its claim that Plaintiffs' RFPs are irrelevant or disproportionate to the needs of this case. Accordingly, Plaintiffs are entitled to an order compelling Deere to produce all responsive documents.

**C. Deere's Initial Responses Were Defective Under Rule 34(b)(2)(C).**

Deere's initial responses to Plaintiffs' Fourth Set of RFPs were not only devoid of the substantive information; they also failed to state whether responsive documents are being withheld on the basis of Deere's objections. *See* Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection."). The advisory committee notes for the 2015 amendments to Rule 34 specifically state that the purpose of this requirement is "to alert other parties to the fact that documents have been withheld *and thereby facilitate an informed discussion* of the objection." Fed. R. Civ. P. 34 advisory committee's note to 2015 amendment (emphasis added).

Deere's noncompliance undermined the parties' November 11 meet and confer. If Deere had complied with Rule 34(b)(2)(C), its counsel could have shared with Plaintiffs

what responsive source code Deere possesses for Head Controllers. Presumably, that would have included much of Deere's Head Controller source code, as a Deere witness declared that all Deere Head Controllers other than Dial-A-Matic Version #1 are microprocessor-based and thus use source code. *See* ECF 200 (Declaration of Byron Miller), ¶¶ 8, 9, 13. If Deere's counsel knew that information, the parties could have knowledgeably discussed whether Deere would produce any requested source code, and if so, for which Deere Head Controllers. Because Deere did not comply with Rule 34(b)(2)(C), its counsel was not able to discuss the specifics of Deere's response to Plaintiffs' Request No. 52, which thwarted the purpose of the meet and confer. *See Huseby, LLC v. Bailey*, 2021 WL 3206776 at *16 (D. Conn. Jul. 29, 2021) ("[T]he Defendants contributed [to the impasse] by … failing to comply with Rule 34(b)(2)(C).").

### D. Deere Has Engaged in a Pattern of Discovery Abuses.

Ignoring this Court's prior refusals to require interim infringement contentions, Deere has objected to Plaintiffs' RFPs, particularly Nos. 52 and 53 "on the basis that Plaintiffs have not served detailed alleged infringement contentions." *See, e.g.*, Ex. B pp. 7-12. That position lacks merit, as Plaintiffs have timely and fully complied with all orders to provide infringement contentions. Even assuming, *arguendo*, Deere were entitled to receive interim contentions from Plaintiffs, a party may not "condition its compliance with its discovery obligations on receiving discovery from its opponent." *Fresenius*, 224 F.R.D. at 653; *see also* Fed. R. Civ. P. 26(d)(3)(B); *Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 183 (N.D. Iowa 2017) ("a party cannot delay responding to discovery simply because the other party has not yet responded to its discovery."). Thus, under no

circumstance would Deere's *quid pro quo* demand relieve it of the obligation to respond timely to Plaintiffs' RFPs.

Importantly, Deere has previously failed to respond to Plaintiffs' interrogatories and requests for production, thus prompting the Northern District of Indiana to order Deere to pay Plaintiffs' motion costs.[4] Deere's conduct here is no different.

**IV. Plaintiffs Are Entitled to Their Reasonable Attorneys' Fees and Costs.**

Deere's misconduct has forced Plaintiffs to spend time and resources – including those of this Court – in bringing the present motion. Furthermore, Deere's actions cannot reasonably be considered "substantially justified." Plaintiffs, therefore, respectfully request an award of their fees and costs as required by Rule 37(a)(5)(A). *See Brown v. Iowa*, 152 F.R.D. 168, 173 (S.D. Iowa 1993) ("A reading of the Rule leads to the inescapable conclusion that the award of expenses is mandatory against a party whose conduct necessitated a motion to compel discovery [ ] unless the court finds the opposition to the motion was substantially justified"); *Arnold v. ADT Sec. Servs.*, Inc., 627 F.3d 716, 721 (8th Cir. 2010) (affirming award of attorneys' fees under Rule 37 where non-movants were not substantially justified in failing to respond to discovery requests).

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an order compelling Deere to produce all documents responsive to Plaintiffs' Fourth Set of RFPs.

---

[4] *See* Ex. F (ECF 89) pp. 3.

Dated: November 25, 2026

*_/s/ Christopher A. Young_*
Christopher A. Young (*pro hac vice*)
Sara E. Filo (*pro hac vice*)
BASSFORD REMELE PA
100 S. 5th St, Suite 1500
Minneapolis, MN 55402-1254
Phone: 612-333-3000
Fax: 612-333-8829
cyoung@bassford.com

Thomas J. Oppold (*pro hac vice*)
OPPOLD IP LAW
14756 Rosewood Rd. NE
Minneapolis, MN 55372
toppold@oip.law

*_/s/ Glenn Johnson_*
Glenn Johnson (AT0003856)
MCKEE, VOORHEES & SEASE, PLC
801 Grand Avenue, Suite 3200
Des Moines, IA 50309
Phone: 515-288-3667
glenn.johnson@ipmvs.com

*Attorneys for Plaintiffs,*
Richard Gramm and Reaper Solutions, LLC

## CERTIFICATE OF SERVICE

I declare that on November 25, 2026, the foregoing document was filed using CMECF, which will send notification of such filing to the following counsel of record:

Jeffry M Nichols PHV
Laura Lydigsen PHV
Judy He PHV
Crowell & Moring LLP - Chi/IL
300 N. LaSalle, Suite 2500
Chicago, Illinois 60654
312-321-4200
Fax: 312-321-4299
Email: jnichols@crowell.com

ATTORNEYS FOR DEFENDANT
DEERE AND COMPANY

*/s/ Christopher A. Young*